**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2567-19

JUAN ROBINSON, a/k/a
JACKIE CHEROKEE,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted February 9, 2021 – Decided April 28, 2021

Before Judges Gilson and Moynihan.

On appeal from the New Jersey Department of Corrections.

Juan Robinson, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Chanell Branch, Deputy Attorney General, on the brief).

PER CURIAM

Juan Robinson, an inmate in a State prison, appeals from a final decision imposing disciplinary sanctions on him for possession of a weapon in violation of prohibited act *.202, N.J.A.C. 10A:4-4.1. We reverse and remand for a new hearing.

I.

The charge against Robinson stemmed from an anonymous note submitted through the inmate grievance system. The note stated that there was an altered razor blade taped under the bottom bunk in cell 309. The cell was searched and a razor blade with the handle cut off was found taped under the bottom bunk bed. Cell 309 was occupied by two inmates: Robinson and Tyrone Johnson. Johnson was assigned the bottom bunk bed and Robinson was assigned the top bunk bed.

Johnson denied ownership of the razor blade and stated that he was being set up. Robinson denied that the razor blade belonged to him and pointed out that he was assigned to the top bunk bed. Both Johnson and Robinson were charged with possession of a prohibited weapon.

Robinson pled not guilty and was assigned counsel substitute. During the proceedings, he requested a polygraph examination and a fingerprint analysis. An administrator with the Department of Corrections (DOC) denied both

requests. In denying the polygraph, the administrator stated that "there is no new evidence being presented that would necessitate a credibility review." In denying the fingerprint analysis, the same administrator stated: "The hearing officer at your hearing can address any issues of credibility."

The hearing was conducted over several days. No live witnesses testified; instead, the hearing officer considered (1) written reports and statements from corrections officers involved in reviewing the anonymous note and searching the cell; (2) the anonymous note; (3) pictures of the razor blade; (4) written statements by Robinson and his counsel substitute; and (5) written answers given by a sergeant responding to written questions posed by Robinson and his substitute counsel.

The sergeant had reviewed the anonymous note. He acknowledged that the note stated that the razor blade would be found under the bottom bunk and that there was no evidence that Robinson, who occupied the top bunk, possessed the weapon.

Robinson appears to have requested Johnson to testify at the hearing, but Johnson declined.[1] The hearing officer did consider Johnson's written statement,

---

[1] In its brief on this appeal, the DOC contends that Robinson did not request any witnesses. The handwritten adjudication prepared by the hearing officer indicates that Robinson did request Johnson to testify.

A-2567-19

in which he claimed that someone was trying to set him up. While Johnson had reportedly told a corrections officer that he did not own the razor blade, that denial was not included in his written statement.

Based on that written evidence, the hearing officer found Robinson guilty of possession of a prohibited weapon. In a short, handwritten explanation of the reasons for the decision, the hearing officer stated:

> The [inmate] pled [not guilty] to charge, however provided insuffi[cien]t evidence to support his claim. [Inmate] was afforded all due process. All evidence was considered [and] does support that the weapon in question was found in [inmate's] room. [Inmate's] bunkie didn't take ownership of the weapon [and] denied any knowledge of the same.

Robinson was sanctioned with 200 days of administrative segregation, 100 days loss of commutation time, and 30 days loss of canteen privileges. He administratively appealed.

The DOC, acting through an assistant superintendent, upheld the finding of guilt of possession of the prohibited weapon. The final decision modified one of the sanctions, imposing 100 days of administrative segregation instead of 200 days.

A-2567-19

## II.

On this appeal, Robinson contends that he was deprived of due process because there was no substantial credible evidence to support his guilt and his request for a polygraph should have been granted. We agree that he was entitled to a polygraph examination.

Our scope of review of a DOC's decision is limited. Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). Generally, an agency's decision should not be disturbed on appeal unless it is arbitrary, capricious, or unreasonable, or unsupported by substantial credible evidence. Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980). Substantial evidence has been defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion," or "evidence furnishing a reasonable basis for the agency's action." Figueroa, 414 N.J. Super. at 192 (citations omitted); see also N.J.A.C. 10A:4-9.15(a). Accordingly, "disciplinary actions against inmates must be based on more than a subjective hunch, conjecture or surmise of the factfinder." Figueroa, 414 N.J. Super. at 191.

"Prisons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div.

1999).  A reviewing court "may not substitute its own judgment for the agency's, even though the court might have reached a different result."  In re Stallworth, 208 N.J. 182, 194 (2011) (citation omitted).

Nevertheless, our review is not "perfunctory," nor is "our function . . . merely [to] rubberstamp an agency's decision[.]"  Figueroa, 414 N.J. Super. at 191.  "[R]ather, our function is 'to engage in "a careful and principled consideration of the agency record and findings."'"  Ibid. (quoting Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000)).

To enable us to exercise this function, the agency must provide a reasonable record and statement of its findings.  Blyther v. N.J. Dep't of Corr., 322 N.J. Super. 56, 63 (App. Div. 1999).  "No matter how great a deference we must accord the administrative determination, we have no capacity to review the issues at all unless there is some kind of reasonable factual record developed by the administrative agency and the agency has stated its reasons with particularity."  Ibid. (internal quotation marks omitted) (citation omitted). "[W]e insist that the agency disclose its reasons for any decision, even those based upon expertise, so that a proper, searching, and careful review by this court may be undertaken."  Balagun v. N.J. Dep't of Corr., 361 N.J. Super. 199, 203 (App. Div. 2003); see also N.J.A.C. 10A:4-9.15 (mandating that a hearing

officer specify, on an adjudication form, the evidence relied upon in making a finding of guilt after a disciplinary hearing).

N.J.A.C. 10A:3-7.1 allows a prison administrator to request a polygraph in certain situations, including circumstances where an inmate charged with disciplinary infractions has sought such a polygraph. The regulation states, in relevant part:

> (a) A polygraph examination may be requested by the Administrator or designee:
>
> 1. When there are issues of credibility regarding serious incidents or allegations which may result in a disciplinary charge[.]
>
> [Ibid.]

While "[a]n inmate's request for a polygraph examination shall not be sufficient cause for granting the request," N.J.A.C. 10A:3-7.1(c), an inmate has a right to a polygraph test in certain situations. Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 20 (App. Div. 2005); but see Johnson v. N.J. Dep't of Corr., 298 N.J. Super. 79, 83 (App. Div. 1997) (citing N.J.A.C. 10A:3-7.1(c)) (concluding the appellant did not "have the right to a polygraph test"). "[A]n inmate's right to a polygraph is conditional and the request should be granted when there is a serious question of credibility and the denial of the examination would

compromise the fundamental fairness of the disciplinary process." Ramirez, 382 N.J. Super. at 20.

There is no dispute that the razor blade was found in the cell occupied by Johnson and Robinson. The question is whether there was substantial credible evidence establishing that Robinson possessed that weapon. "[P]ossession . . . signifies 'a knowing, intentional control of a designated thing, accompanied by a knowledge of its character.'" State v. Pena, 178 N.J. 297, 305 (2004) (emphasis removed) (quoting State v. Pena, 301 N.J. Super. 158, 162-63 (App. Div. 1997)). Accordingly, "an inmate cannot be found guilty of possession of a prohibited [item] 'unless [there is sufficient proof] that he knew or was aware, at a minimum, that he possessed [the item].'" Figueroa, 414 N.J. Super. at 192 (second alteration in original) (quoting Pena, 178 N.J. at 305).

Robinson's credibility was key to the determination of his guilt. He denied knowledge or ownership of the razor blade. The hearing officer did not make a credibility finding. Instead, the hearing officer stated that there was insufficient evidence to support Robinson's claim. It was not Robinson's burden to prove his claim. Instead, the DOC had to prove that Robinson possessed the prohibited weapon. See id. at 188-89 (reversing a DOC final decision because the DOC

failed to present "sufficient evidence to meet its burden of persuasion to sustain its charge that [the inmate] committed the prohibited act").

Moreover, no witness for the DOC appeared at the hearing. Instead, the hearing officer relied on written statements and documents, none of which provided direct evidence that Robinson possessed the altered razor blade.

The DOC does not expressly address whether it contends that both Johnson and Robinson possessed the razor blade. If that is its position, however, then Robinson's denial of knowledge or ownership of the razor blade becomes central to his alleged constructive possession of the weapon. See State v. Morrison, 188 N.J. 2, 14-15 (2006) (explaining the concepts and standards for imputing constructive possession); Figueroa, 414 N.J. Super. at 192 (explaining the concept of constructive possession in the context of a prison disciplinary matter).

We conclude that the DOC unreasonably denied Robinson's request for a polygraph. Accordingly, we remand this matter with the direction to conduct the requested polygraph examination and to conduct a new hearing that includes consideration of the polygraph evidence.

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-2567-19